UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
KELLY GEARY-WILLIAMS,

       Plaintiff,

vs.

HEALTH QUEST SYSTEMS, INC.,

       Defendant.
------------------------------------------------------------------X

**COMPLAINT**

**JURY TRIAL DEMANDED**

## I.    **INTRODUCTION**

1. Plaintiff brings this action against Defendant to redress the violation of her rights under the Family Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 et seq., the New York State Human Rights Law (NYSHRL), NY Exec. Law § 296, and the New York Labor Law, NYLL § 215.

## II.    **PARTIES**

2. At all relevant times, Plaintiff Kelly Geary-Williams ("Plaintiff") was an employee of the Defendant, Health Quest Systems, Inc., and worked at its Urgent Care facility in LaGrangeville, New York, in Dutchess County, within this judicial district.

3. Defendant Health Quest Systems, Inc. ("Defendant" or "Health Quest") is a not-for-profit corporation that operates a number of medical centers, including Vassar Brothers Hospital, Putnam Valley Hospital, Northern Dutchess Hospital, urgent care centers in LaGrangeville and Wappingers Falls, and a number of other medical practices in the Hudson Valley. Its corporate headquarters are located in LaGrangeville, New York.  It may sue and be sued.

### III.   JURISDICTION & VENUE

4.   As Plaintiff brings this action to enforce the Family Medical Leave Act (FMLA), this Court has subject matter jurisdiction pursuant to 29 U.S.C. §§ 2601 et seq.

5.   As Plaintiff's New York State law claims arise from the same nucleus of operative facts as her federal claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6.   Venue is proper in this Court because the events underlying Plaintiff's claims occurred in Dutchess County, within this judicial district.

### IV.   FACTUAL AVERMENTS

7. In 2009, Plaintiff commenced working for Defendant as a per diem licensed practical nurse (LPN) at its urgent care facilities in LaGrangeville and Wappinger Falls.

8. In or about 2011, Plaintiff was made a "permanent" full-time LPN by Defendant and, shortly thereafter, she was assigned to work exclusively at the LaGrangeville Urgent Care facility.

9.   At all times, Plaintiff well-performed her duties for Defendant.  She was regularly deemed to have "Exceeded Expectations" on her annual performance reviews.

10.   Defendant did not adequately staff the Lagrangeville Urgent Care facility.

11.   Plaintiff, who was assigned to work twelve hour shifts, from 7:45 a.m. to 8:00 p.m., frequently could not take meal breaks due to the lack of adequate staffing.  As a result, Plaintiff had to care for as many as 70 patients in one day without receiving any breaks.

12.   This problem became more severe in 2015.

13.   Plaintiff expressed concern about her inability to take meal breaks to her clinical supervisor, Michelle Percopo, but Ms. Percopo was unresponsive to Plaintiff's concerns.

2

14. In or about February 2016, Plaintiff sent an email to supervisors about her concerns regarding the failure to provide back-up so that she could take breaks [which are required by law] and its negative impact on patient care.

15. Plaintiff suffered from a serious medical condition to her foot, which impaired her ability to walk and caused her great discomfort.

16. Plaintiff was advised by her medical providers that she needed to have a total toe joint replacement operation.

17. Plaintiff delayed having such an operation because she was concerned about the effect taking leave would have on her job, as well as her dedication to her job and the patients she served.

18. However, Plaintiff's foot condition had worsened over time and began to affect her gait and cause muscle weakness and pain in her right hip.

19. In consultation with her medical providers, Plaintiff planned to have the surgery in early May 2016.

20. After the surgery, Plaintiff would need to take between 8-12 weeks of leave to recover.

21. Plaintiff qualified for leave under the FMLA, as she worked much more than 1,250 hours per year and Health Quest has far more than 50 employees within a 75-mile radius.

20. In or about mid-February 2016, Plaintiff advised her supervisor, Ms. Percopo, of her need for surgery and need for related medical leave for 8 to 12 weeks.

21. Ms. Percopo responded that if Plaintiff took such leave, it would create staffing problems at the facility.

3

22. In early March 2016, while Plaintiff was out on vacation leave, Defendant changed its documentation procedures regarding tuberculosis tests, which are called PPD's. Patients often need these tests when starting new jobs as a condition of employment.

23. Plaintiff was not trained in completing the new form.

24. On or about March 11, 2016, upon her return from vacation, Plaintiff and a Physician's Assistant (PA), Jamie White, administered a PPD to a patient. White had authorized the procedure.

25. While at home the next day, Plaintiff was called and told that the new PPD form had to be completed for the patient who had earlier received the test.

26. Plaintiff arranged to come in during her scheduled time off to complete the paperwork.

27. When she arrived at the facility to fill out the form, Physician Assistant White was not present.

28. The new form had a section regarding details of the test, including the date of the test, the manufacturer, the lot number, the expiration date, and who implanted and who authorized the PPD.

29. Plaintiff honestly and accurately completed the required section. Next to "Authorized By:", she printed the name of "Jamie White," the Physician's Assistant who had authorized the test.

30. The new PPD form did not indicate that the person who authorized the test had to sign the form.

31. Plaintiff did not sign Ms. White's name or otherwise falsify the PPD form.

4

32.   On or March 26, 2016, Plaintiff was summoned to a meeting with a corporate official, Cristine Urbanak, Health Quest's Assistant Vice President for Operations.

33.   The only previous encounter Plaintiff had with Urbanak was in late February 2016, which was very shortly after Plaintiff had made a written complaint to management about understaffing and had advised management of her need for surgery and resulting need for medical leave.

34.   At that time, in late February, without Plaintiff's foreknowledge, Ms. Urbanak had gone through Plaintiff's computer while Plaintiff was not at her desk.

35.  Urbanak then questioned Plaintiff about an exam she had performed weeks earlier of a Health Quest employee who had been treated at the Urgent Care facility.

36.   At that time, Plaintiff had answered Urbanak's questions, but it appeared that Urbanak was fishing for some possible infraction that Plaintiff had committed, so that she might justify taking action against her.

37.   However, Plaintiff had not committed any infraction and neither Urbanak nor Health Quest took any action against Plaintiff in connection with her exam of a Health Quest employee.

38.   At the March 26, 2016 meeting, without any justification, Urbanak was openly hostile toward Plaintiff.

39.   Urbanak angrily accused Plaintiff of committing "forgery" by printing Jamie White's name next to "Authorized by;" on the PDD test form.

40.  Plaintiff, who was taken aback by Urbanak's accusation, explained the circumstances of what had occurred and noted that the new PPD form had a line for "Authorized by," not "Authorized signature."

5

41. There was no dispute that PA White had authorized the test.

42. Plaintiff noted that she printed White's name and did not sign it, that she had not knowingly violated the new form's protocol, and that she certainly had not "forged" PA White's signature.

43. Urbanak then angrily claimed, "We have other things on you." She told Plaintiff that her employment was terminated.

44. In fact, the only disciplinary action that Plaintiff had ever received was a written caution several years earlier when she first started working in Urgent Care. That was for a minor medication error, and there had been no such write-ups, warnings, or other actions since.

45. Health Quest has a progressive discipline policy which it states it will follow except for in the case of "Major Violations." The progressive disciplinary actions are: "Written Caution, Written Warning, Final Written Warning and/or Suspension and Termination."

46. Even for "major violations," Defendant's policy provides that they may result in "Written Warning, Suspension or Immediate Termination."

47. Plaintiff did nothing wrong here: She simply printed the name of the Physician's Assistant who *indisputably* authorized the PPD test.

48. The new PPD form did not indicate that the PA had to sign her name next to "Authorized by:", and Plaintiff did not attempt to make it appear that PA White had signed her name.

49. Moreover, at the time of this event, Plaintiff had not even received training on the new PPD form.

50. Defendant terminated Plaintiff because it wanted to get rid of her in light of her need

to take FMLA, as it believed that finding a permanent replacement for her would be easier than finding a temporary replacement.

51.    In addition, Defendant terminated Plaintiff because of her disability, namely her foot condition, which affected her ability to walk and which led her to need surgery and need to take leave after her surgery.

52.    Despite her foot condition, Plaintiff could perform the essential functions of her job.

53.    The only "reasonable accommodation" that Plaintiff needed for her foot condition was 8-12 weeks of leave to recover from her foot surgery, which Defendant was required to grant under the FMLA and thus was clearly reasonable.

54.    Rather than providing Plaintiff with this reasonable accommodation, Health Quest terminated her employment.

55.    In addition, Defendant terminated Plaintiff because of the fact that she raised concerns about its failure to provide her with meal breaks, as required under New York Labor Law § 162.

56.    Given her 12-hour shifts, Plaintiff was at least entitled to two meal breaks, one during the day and one in the evening, of 45 minutes and 20 minutes, respectively.

57.    As a result of her termination, Plaintiff has lost pay and benefits, experienced physical sickness, and has experienced substantial emotional pain and suffering.

58.    Defendant's violations of the FMLA and New York Labor Law were willful.

## V.    CAUSES OF ACTION

59.    Plaintiff incorporates paragraphs 1-58 as if fully re-written herein.

7

60. By terminating Plaintiff because of her need to take leave for foot surgery, defendant violated the Family Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 et seq., both by interfering with her rights under the FMLA and in retaliation for her stated intention to exercise her leave rights under the FMLA.

61. By terminating Plaintiff because of her medically documented foot impairment, and by failing to reasonably accommodate her by allowing her to take 8-12 weeks of leave to treat her foot impairment, Defendant discriminated against Plaintiff based on her disability in violation of the New York Human Rights Law, Executive Law § 296.

62. By terminating Plaintiff because of her good faith complaints about Defendant's failure to allow her to take meal breaks, Defendant violated NY Labor Law § 215.

## VI.    **PRAYER FOR RELIEF**

63. WHEREFORE, Plaintiff prays that this Honorable Court:

(a) empanel a jury to hear and decide this matter;

(b) award to Plaintiff compensatory damages, including damages for past and future lost pay and benefits, physical sickness and emotional distress;

(c) award to Plaintiff liquidated damages against defendant for its violation of the FMLA;

(d) award to Plaintiff liquidated damages against defendant for its violation of the NY Labor Law;

(e) award to Plaintiff reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 2617(a)(3), and the New York State Labor Law, and

(f) enter any other relief justified by the law and facts.

8

Dated: August 9, 2016
      Goshen, New York

Respectfully submitted,

_____
Christopher D. Watkins
SUSSMAN & WATKINS
1 Railroad Ave. – PO Box 1005
Goshen, NY 10924
(845) 294-3991
*Attorneys for Plaintiff*